EARLENE WILLIAMS, APPELLANT, v. DEPARTMENT OF HUMAN SERVICES, DIVISION OF PUBLIC WELFARE AND MIDDLESEX COUNTY WELFARE BOARD, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 12, 1978—Decided June 30, 1978.

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Melville D. Miller, Jr.,* Administrator, Middlesex County Legal Services Corporation, attorney for appellant (*Messrs. Richard J. Bennett* and *Paul V. Mullin* on the briefs; *Mr. Alfred Donnarumma,* of counsel).

*Mr. John J. Degnan,* Attorney General of New Jersey, attorney for respondent Department of Human Services (*Ms. Erminie L. Conley,* Deputy Attorney General, of counsel; *Ms. Andrea M. Silkowitz,* Deputy Attorney General, on the brief).

PER CURIAM. Petitioner Earlene Williams appeals from a decision of the Division of Public Welfare, Department of Institutions and Agencies (Division), determining that on the facts presented she and her family were not entitled to emergency welfare assistance.

The facts do not seem to be disputed. At all pertinent times petitioner and her four minor children, participants in the federally-funded Assistance for Dependent Children Pro-

gram (ADC), resided at Apartment 31-D, Simplex Avenue, New Brunswick. Her monthly allotment was $406 and she had no other source of income. She received her monthly assistance check for August 1977 and cashed it on August 1, 1977. On August 2, 1977, while running some errands, the cash was stolen from the locked glove compartment of her car. She reported the theft to the police that very day. When she informed her landlord of the reason that she could not pay her rent for August, she was told that unless payment in full was forthcoming within the week, eviction proceedings would be commenced.

On August 3, 1977, fearful of her eviction, she applied for emergency assistance to the Middlesex County Welfare Board. The requested assistance was granted as to the food stamps but denied with respect to the missing rent money. Following a fair hearing, this determination was affirmed. The matter was again affirmed by the Division of Public Welfare on August 29, 1977, notwithstanding service of a notice of eviction on August 15, 1977. This appeal ensued.

Petitioner contends, in essence, that the threat of eviction for nonpayment of rent, or initiation of eviction proceedings where petitioner lacks the wherewithal to pay, establishes a "manifestly imminent" state of homelessness within the meaning of N. J. A. C. 10:82–5.10, the regulation defining the criteria for emergency assistance eligibility.[1]

---

[1] 10:82–5.10. *Emergency assistance*

(a) "Emergency assistance" is hereby established as any extra or additional payment(s), authorized in accordance with this section during the period of 30 consecutive days immediately following the occurrence of an emergency as defined in subsection (c) of this section, issued to or for an eligible unit otherwise receiving continuing assistance under AFDC or AFWP.

1. In addition, these regulations apply to an emergency (as described in subsection (c) of this section) which occurred within the seven calendar days immediately prior to application for AFDC, if the applicant is determined eligible at the time of application under established procedures and standards.

We disagree. Clearly, a verbal threat of eviction for delayed rent payments will not suffice to create a manifestly imminent state of homelessness. Failure to make a timely payment of rent always poses the hazard of homelessness; it does not, however, create a state of "manifestly imminent" homelessness. At the time the welfare board denied relief, a mere verbal threat of eviction was the only proof of imminent homelessness and it, correctly in our view, denied the relief.

Moreover, we disagree with petitioner that initiation of eviction proceedings creates the kind of emergency *N. J. A. C.* 10:82–5.10 was intended to redress, the threatened absence of minimal life-sustaining resources. *Burton v. N. J. Dep't of Institutions and Agencies*, 147 *N. J. Super.* 124, 130 (App. Div. 1977). Other accommodations for the beleaguered family may be found during the interim between commencement of eviction proceedings and their termination. Stays of judgments for possession are routinely granted to permit other living arrangements to be made or to permit emergency applications for assistance such as those made here. Where eviction is not stayed by the trial judge, applications can be made to this court. We are not unmindful of the threat of eviction posed by court proceedings; all that

(b) The following conditions must be observed with respect to all expenditures by the county welfare agency for which Federal and/or State matching is claimed under classification of emergency assistance:

1. There shall be no claim for matching with respect to payments authorized under subsection (a) of this section more frequently than one consecutive period of 30 days within any 12 consecutive months unless there has been special review and affirmative action by the county welfare board itself, duly recorded in the minutes of a regular or special meeting; under such circumstances State matching but no Federal matching can be allowed.

2. Payments of emergency assistance in AFDC shall be made as vendor payments whenever feasible, or as direct payments to the eligible unit, or as a combination of both. All payments of emergency assistance, when authorized in full compliance with the conditions in this section, shall be disbursed from the assistance account and reported on form PA–204D.

we hold is that their mere commencement does not create a manifestly imminent state of homelessness within the meaning of the applicable regulation. The emergency relied upon must indeed exist before the requested relief can be granted since only one such payment can be made each year, *N. J. A. C.* 10:82-5.10(b) (1); unwarranted relief granted may well bar relief where urgently needed in the same year.

Finally, we are constrained to observe that although the relief sought was for an emergency of a specified kind, manifestly imminent homelessness, final redress was not sought by way of emergency application to this court but through normal appellate processes. Were the emergency as real as petitioner argues it was, prompt relief could have been obtained by emergency application to this court. An argument to an appellate court almost a year after the emergency has arisen lacks all semblance of urgency.[2]

Affirmed.

[2]Counsel for petitioner has advised us that petitioner failed to appear at the return day of an application to stay eviction and has since moved to another apartment.